# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Hassan Mohamed Abdillahi,<br><br>Petitioner,<br><br>v.<br><br>Eddie Miles,<br><br>Respondent. | Case No. 16-cv-0963 (JNE/HB)<br><br><br>**REPORT AND RECOMMENDATION** |

HILDY BOWBEER, United States Magistrate Judge

A state-court jury found petitioner Hassan Mohamed Abdillahi guilty of second-degree intentional murder in 2009. Abdillahi has submitted a petition for a writ of habeas corpus challenging the validity of that conviction. (*See* Pet. [Doc. No. 1]); 28 U.S.C. § 2254. The petition and several pending motions have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. After review, this Court concludes that Abdillahi's habeas corpus petition should be dismissed and that his pending motions should be denied.

## I.    Background

### A.    State Court Proceedings

Victim A.H. was killed in September 2008 after a shooting outside a Minneapolis mall. *See Abdillahi v. State*, No. A16-0179, 2016 WL 4069294, at *1 (Minn. Ct. App.

Aug. 1, 2016) ("*Abdillahi IV*").[1]  As captured by surveillance footage, A.H. and two other

individuals, A.I. and S.M., stood outside the building before the shooting.  *Id*.  Another

person wearing a hooded shirt and unidentifiable on video approached the three men

standing outside the mall, then walked away.  *Id*.  After A.I. and S.M. entered the building,

the hooded individual returned and killed A.H., who had remained outside.  *Id.*

Several pieces of evidence admitted at trial implicated Abdillahi as the killer.

A.I., who had known Abdillahi prior to the murder, testified that he had recognized

Abdillahi as he walked past that evening, and he identified Abdillahi as the hooded

individual later seen killing A.H. on the surveillance tape.  In support of its theory that

A.H.'s homicide was the end point of a spiral of retaliatory violence, the prosecution

presented evidence that one year before the murder, Abdillahi shot a different individual,

S.A., who in turn later murdered Abdillahi's cousin; S.A. had fled the country, and (the

Government argued) Abdillahi substituted A.H., a friend of S.A., as the target for the next

round of bloodshed.  *See State v. Abdillahi*, 2011 WL 691623, at *2 (Minn. Ct. App. Mar. 1,

2011) ("*Abdillahi I*").  "Another witness, K.O., testified that in September 2008, [Abdillahi]

told [K.O.] that . . . he intended to retaliate by killing the victim at the end of September."

*Abdillahi v. State*, No. A12-1477, 2013 WL 2924900, at *1 (Minn. Ct. App. June 17, 2013)

("*Abdillahi II*").  Witness M.Y. testified, over objection from defense counsel, that A.I.

---

[1]  As explained in greater detail below, Abdillahi has challenged his conviction four times
before the Minnesota Court of Appeals up to this point (a fifth challenge is currently
pending on appeal).  The opinions of the Minnesota Court of Appeals affirming denial of
relief will be labeled "*Abdillahi I*" (direct appeal), "*Abdillahi II*" (denial of first petition
for postconviction relief), "*Abdillahi III*" (denial of second petition for postconviction
relief) and *"Abdillahi IV"* (denial of fourth petition for postconviction relief).

named Abdillahi as the killer during a conversation that took place hours after the murder, (*see* Pet. at 28-29), countering the defense theory that A.I.'s identification of Abdillahi was concocted well after the fact and grounded either in personal animosity against Abdillahi or in fear of retribution from those close to A.H., rather than the truth. Based on this and other evidence, a jury found Abdillahi guilty of the murder. He was sentenced to a 391-month term of imprisonment. (*See* Pet. at 1.)

At the time Abdillahi filed his federal habeas corpus petition, he had challenged his conviction on four separate occasions in state court: on direct appeal and in three petitions for postconviction relief brought under Minn. Stat. § 590.01. On direct appeal, Abdillahi argued that the following errors required reversal of the conviction: (1) insufficient evidence to support the verdict; (2) improper admission of *Spreigl*[2] evidence concerning the shooting of S.A. in September 2007; (3) erroneous jury instructions about the permissible uses of the *Spreigl* evidence; (4) prosecutorial misconduct during the closing statement; (5) denial of requests for discovery concerning two other homicide investigations in which Abdillahi was reputed to have been implicated; (6) ineffective assistance of counsel in multiple respects; (7) failure to declare a mistrial after an outburst by K.O.; (8) wrongful admission of testimony about statements A.I. made shortly after the murder; (9) permitting the jury to view the surveillance recordings of the murder during closing arguments; and (10) not separately questioning each juror about a comment made by a member of the public during

---

[2] *See State v. Spreigl*, 139 N.W.2d 167 (Minn. 1965). *Spreigl* evidence is the Minnesota state-law analogue to prior-bad-act evidence admissible under Rule 404(b) of the Federal Rules of Evidence. *See, e.g.*, *Pug v. Minnesota*, No. 06-cv-2689 (PAM/JSM), 2008 WL 5284344, at *12 (D. Minn. Dec. 18, 2008).

deliberations. *Abdillahi I*, 2011 WL 691623, at *1, 8-9. The Minnesota Court of Appeals

affirmed the conviction. The Minnesota Supreme Court declined review.

Abdillahi filed his first motion for postconviction relief in 2011 arguing that

> (1) newly discovered evidence . . . established that the *Spreigl*
> evidence was not probative and was therefore erroneously
> admitted at trial; (2) he did not have an opportunity to challenge
> the *Spreigl* evidence given [the Minnesota court's]
> characterization of the events as part of a pattern of violence;
> (3) [the court of appeals] deprived him of his constitutional
> rights by declining to 'inquire upon' or stay and remand for
> proceedings 'regarding appellate counsel's potential conflict of
> interest' and allegedly ineffective assistance; (4) there was an
> unreasonable delay in judicially confirming probable cause;
> (5) the complaint contained misrepresentations of fact material
> to probable cause; (6) the prosecution suppressed or failed to
> disclose evidence in the complaint to support probable cause;
> (7) he was deprived of effective assistance of trial counsel; and
> (8) he was deprived of effective assistance of appellate counsel.

*Abdillahi II*, 2013 WL 2924900, at *3. The trial court determined that the claims were in

part procedurally barred by *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976), as they

either were raised, or could have been raised, in earlier proceedings; to the extent they were

not barred by *Knaffla*, the claims were found to be meritless, *see Abdillahi II*, 2013 WL

2924900, at *1. The Minnesota Court of Appeals affirmed the denial of the petition for

postconviction relief. Again, the Minnesota Supreme Court declined review.

Abdillahi filed his second motion for postconviction relief in 2013 arguing that:

(1) the testimony of A.I. and K.O at trial was false; (2) he is actually innocent; (3) his trial

counsel was ineffective; (4) the trial court erred in denying his motion for disclosure of

A.I.'s pretrial statements, which Abdillahi believed to be exculpatory; and (5) the

prosecution was racially biased. *See Abdillahi v. State*, No. A14-1795, 2015 WL 4877721,

at *1 (Minn. Ct. App. Aug. 17, 2015) ("*Abdillahi III*"). The Minnesota Court of Appeals affirmed the district court's determination that A.I.'s and K.O.'s testimony had not been shown to be false, found that the actual-innocence and ineffective-assistance claims were barred by *Knaffla*, declined to entertain the request for disclosure of A.I.'s pretrial statements, and affirmed the district court's decision not to hold an evidentiary hearing on the alleged racial bias of the prosecutor. *Id.* at *4-6. Once more, the Minnesota Supreme Court declined review.

Abdillahi filed his third postconviction petition in 2015, once more challenging the effectiveness of his trial and appellate counsel (that petition was pending on appeal when Abdillahi initiated this habeas action, but it reached its final conclusion during the pendency of this litigation). Abdillahi also argued that the prosecutor committed misconduct by withholding A.I.'s pretrial statements and allowing A.I.'s allegedly false testimony to go uncorrected. *Abdillahi IV*, 2016 WL 4069294, at *2-3. In addition, Abdillahi moved to compel the disclosure of A.I.'s pretrial statements. *Id.* at *6. The Minnesota Court of Appeals found most of the claims to be barred by *Knaffla*, and it denied on the merits the claim of prosecutorial misconduct based on the withholding of exculpatory or impeaching material from the defense. *Id.* at *2-6. The Minnesota Supreme Court declined review.

Abdillahi has also recently filed a fourth motion for postconviction relief in state court arguing that the police used an unduly suggestive identification procedure when questioning witnesses, that he is actually innocent, and (again) that A.I.'s testimony at trial had been false. The motion was denied by the trial court on May 9, 2017, entirely on the

basis of *Knaffla*.  (*See* Order [Doc. No. 50-3].)  The appeal of that denial is currently

pending.

### B.    Federal Court Proceedings

Abdillahi filed his petition for a writ of habeas corpus on April 11, 2016, raising

twelve grounds for relief:

- In ground one, Abdillahi argues that his due process rights were violated when A.I. testified — falsely, according to the habeas petition — that Abdillahi was the hooded individual who shot and killed A.H.  (*See* Pet. at 8-9.)

- In ground two, Abdillahi argues that the Government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose statements made by A.I. during a pretrial interview with the prosecutor.  (*See id.* at 10-12.)

- In ground three, Abdillahi argues that the Government's possible destruction of evidence related to A.I.'s pretrial interview with the prosecutor would, if proved true, amount to a due process violation.  (*See id.* at 14.)

- In ground four, Abdillahi argues that the prosecutor committed misconduct by (1) failing to correct A.I.'s allegedly false trial testimony, (2) misrepresenting that it had disclosed A.I.'s pretrial interview statements; and (3) impeding Abdillahi's ability to present a defense by allowing the false testimony to be admitted.  (*See id.* at 16-18.)

- In ground five, Abdillahi argues that the prosecution was racially biased, citing a statement made by the prosecutor on a social media account several months after the trial.  (*See id.* at 19-20.)

- In ground six, Abdillahi argues that K.O. testified falsely when he stated that Abdillahi had threatened to kill A.H. two weeks before the murder.  (*See id.* at 21-22.)

- In ground seven, Abdillahi argues that the trial court erroneously admitted *Spreigl* evidence concerning the 2007 shooting.  (*See id.* at 23-24.)

- In ground eight, Abdillahi argues that he was denied effective assistance of counsel and a fair trial because defense counsel did not know about, investigate, or

challenge the alleged *Brady* violation regarding A.I.'s pretrial interview.  (*See id.* at 26.)

- In ground nine, Abdillahi argues that his counsel was ineffective in failing to have excluded the testimony of M.Y. concerning a phone call in which A.I. stated that Abdillahi had killed the victim.  (*See id.* at 28-29.)

- In ground ten, Abdillahi argues that his counsel was ineffective in failing to call witness S.G. to rebut K.O.'s testimony that Abdillahi had threatened to kill A.H. two weeks before the killing occurred.  (*See id.* at 30-31.)

- In ground eleven, Abdillahi argues that his appellate counsel labored under a conflict of interest that inhibited him from pursuing ineffective-assistance-of-counsel claims against the trial counsel.  (*See id.* at 32.)

- In ground twelve, Abdillahi again argues that his appellate counsel had a conflict of interest and, apart from that conflict, provided ineffective assistance on appeal by failing to pursue ineffective-assistance claims against the trial counsel.  (*See id.* at 34-35.)

Certain of Abdillahi's claims were being litigated in his third petition for postconviction relief at the time he filed his federal habeas corpus petition.  To prevent his federal habeas petition from being dismissed as a "mixed" petition containing both exhausted and unexhausted claims, *see Rose v. Lundy*, 455 U.S. 509, 520-21 (1982), Abdillahi filed a motion shortly after initiating this action to stay these proceedings while he exhausted available state-court remedies for any unexhausted claims [Doc. No. 6]. Respondent did not oppose the request, but while the motion for a stay was under advisement, the Minnesota Court of Appeals affirmed the denial of the third post-conviction petition in *Abdillahi IV*, and the Minnesota Supreme Court declined further review.  This Court therefore denied Abdillahi's request for a stay as moot — any putatively unexhausted

claims raised in the habeas petition were, by that point, exhausted — and directed Respondent to file an answer to the petition [Doc. No. 19].

Respondent filed his answer on November 7, 2016 [Doc. Nos. 20-21]. Abdillahi then requested an extension of time to file a reply to Respondent's answer [Doc. No. 24], which this Court granted [Doc. No. 29]. Along with his request for an extension, however, Abdillahi also filed a four-page amendment to the petition seeking to bolster grounds two and four of his original federal habeas petition to take account of what he claimed to be newly discovered evidence.[3] (*See* Am. Pet. [Doc. No. 26] at 2-4.) In addition, Abdillahi sought to add two new grounds for habeas relief in the amendment to his habeas petition; Abdillahi refers to these claims as Grounds XIV and XV, but they are in fact his thirteenth and fourteenth grounds for relief, and so this Court will therefore refer to these claims as grounds thirteen and fourteen throughout this Recommendation. (*See id.*)

The amendment changed Abdillahi's habeas petition as follows:

- With respect to ground two (the claim raised under *Brady*), Abdillahi sought to add the allegation that the prosecution withheld from the defense that "(1) prosecution witnesses were provided favors by the police; (2) the identification process of Petitioner Abdillahi as the alleged suspect was biased and suggestive; [and] (3) S.M. had previously disclosed to law enforcement that Petitioner Abdillahi was not the alleged suspect." (*See id.* at 2.)

- With respect to ground four (prosecutorial misconduct), Abdillahi sought to add an allegedly newly discovered factual predicate that the prosecution knowingly allowed false testimony to go uncorrected. (*See id.*)

- With respect to the newly raised ground thirteen, Abdillahi claimed he was denied due process because his conviction was obtained partly because of an

_____

[3] Abdillahi also refers to amended "Grounds for Relief Three," (Am. Pet. at 2), but in context it appears that he was referring to ground four, not ground three.

unconstitutionally suggestive identification procedure employed by the police.  (*See id.* at 3.)  Specifically, Abdillahi claimed that the police "influenced and directed A.I. and S.M. to identify" him as the suspect during questioning.  (*Id*.)

- With respect to the newly raised ground fourteen, Abdillahi claims that his conviction and sentence violate his due process rights because, in light of newly discovered facts, he can show that he is actually innocent of the offense.  (*See id.* at 4.)

On February 3, 2017, Respondent moved to dismiss the petition [Doc. No. 34].

Respondent argued that the new allegations and grounds for relief asserted by Abdillahi in the amendment to the petition were never raised before the Minnesota state courts and thus had not been fully exhausted.  *See* 28 U.S.C. § 2254(b).  The amendment, argued Respondent, transformed Abdillahi's petition into a "mixed" petition requiring dismissal without prejudice of the *entire* action, should Abdillahi not voluntarily omit the unexhausted claims.  *See Lundy*, 455 U.S. at 520-21.

Abdillahi then renewed his request to stay these proceedings during the pendency of new state-court litigation — his *fourth* petition for postconviction relief — so that his amended petition would not be a mixed petition raising exhausted and unexhausted claims [Doc. No. 45].  In the absence of a stay, Abdillahi requested that any unexhausted claims be deemed voluntarily dismissed, so that he may proceed with the claims that have been fully exhausted.  (*See* Pet.'s Mem. Opp'n. Mot. Dismiss at 24 [Doc. No. 46].)  Abdillahi's habeas petition, Respondent's motion to dismiss, and Abdillahi's motion for a stay are now before the Court, along with two motions [Doc. Nos. 14 & 15] from Abdillahi seeking further discovery and an evidentiary hearing in this matter.

II.    **Amendment to the Petition and Motion to Stay**

Before turning to the habeas corpus petition, this Court must first consider Abdillahi's motion to stay these proceedings pending resolution of his fourth petition for postconviction review in state court.  (*See* Mot. Stay [Doc. No. 45].)  As explained below, this Court concludes that a stay would not be appropriate.

To satisfy the statutory requirement that state-court remedies first be exhausted, *see* 28 U.S.C. § 2254(b), a habeas corpus petitioner must show that his claim has been fairly presented to, and decided on the merits by, the highest available state court.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").  During the pendency of this action, Abdillahi filed an amendment to the habeas petition altering two of the claims in his original petition and raising two entirely new claims for relief.  The denial of those claims remains pending on appeal in state court.

Respondent contends — and Abdillahi does not directly dispute — that the amendment to the habeas petition transforms the pleading into a "mixed" petition.  "[F]ederal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims."  *Rhines v. Weber*, 544 U.S. 269, 273 (2005) (citing *Lundy*, 455 U.S. at 518-19).  A dismissal due to a habeas petition being mixed must be effected without prejudice, so that the petitioner

10

may return to federal court after each of his claims has been exhausted. *See White v. Dingle*, 616 F.3d 844, 846 (8th Cir. 2010). Still, there remains a danger that despite the entry of dismissal being *without* prejudice, a habeas corpus petitioner who has submitted a mixed petition may in some cases be unable to later prosecute his claims in federal court:

> As a result of the interplay between AEDPA's 1-year statute of limitations [28 U.S.C. § 2244(d)] and *Lundy*'s dismissal requirement, petitioners who come to federal court with "mixed" petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims. If a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it under *Lundy* after the limitations period has expired, this will likely mean the termination of any federal review.

*Rhines*, 544 U.S. at 275. To avoid this problem, district courts may, under certain circumstances, stay federal habeas corpus proceedings so that the petitioner can present his unexhausted claims to the state courts and then, upon exhaustion, return to federal court for review of his already-filed habeas petition. *Id.* at 275-76.

Before explaining why this Court concludes a stay would not be appropriate in this matter, it would be helpful to describe with particularity how, and to what extent, Abdillahi's amendment to his habeas petition includes claims that have not been fairly presented to the Minnesota Court of Appeals or, by extension, the Minnesota Supreme Court.

### A.   Claims in Amendment to Habeas Corpus Petition

#### 1.   "[P]rosecution witnesses were provided favors by the police"

11

In ground two of his original habeas petition, Abdillahi claims that the Government, in violation of *Brady*, failed to disclose exculpatory statements made by A.I. to the prosecutor during the investigatory process.  (*See* Pet. at 10-12.)  In his amendment to the habeas petition, Abdillahi seeks to revise ground two to include the allegation that "prosecution witnesses were provided favors by the police" and that this fact also was not disclosed to the defense, again in violation of *Brady*.  (Am. Pet. at 2.)  Never does Abdillahi explain what these "favors" to the witnesses entailed, but, more importantly for purposes of this Recommendation, Abdillahi did not raise this claim until his fourth petition for post-conviction relief.  (*See* Pet.'s Fourth Pet. Postconviction Relief at 4-6 [Doc. No. 50-1].)  The denial of Abdillahi's fourth petition for post-conviction review remains pending on appeal in state court.  Thus, the claim that prosecution witnesses were enticed through favors by law enforcement officials, and that this information was not disclosed to the defense, has not yet been fairly presented to the Minnesota Supreme Court.

### 2.    Use of Unduly Suggestive Identification Procedures

Abdillahi seeks both to amend his previous claims and to add a new ground for relief (ground thirteen) with the allegation that police used an unduly suggestive identification procedure when questioning witnesses A.I. and S.M.  (*See* Am. Pet. at 2-3.)  Specifically, Abdillahi claims that "[t]he homicide detectives in this case influenced and directed A.I. and S.M. to identify Petitioner Abdillahi as the alleged suspect even after they informed the police that either Abdillahi was not the suspect or that the suspect was not in the prepared photo lineup."  (*Id.* at 3.)

In part, these allegations are a variation on the theme that A.I. offered false testimony at trial and that the prosecution knowingly allowed this false testimony to go forward. This claim, as presented in grounds one and four of the petition, has been fairly presented to the state courts. *See Abdillahi III*, 2015 WL 4877721, at *2-5. Likewise, Abdillahi has already exhausted the claim that A.I. made exculpatory statements during the pretrial investigatory process and that the prosecution failed to turn these statements over to the defense, as raised in ground two of the petition. *See Abdillahi IV*, 2016 WL 4069294, at *4-5.

Not until his fourth petition for post-conviction review, however, did Abdillahi suggest that the *procedures* employed by law-enforcement officials when questioning A.I. or S.M. may have been unduly suggestive. (*See* Pet.'s Fourth Pet. Postconviction Relief at 3.) The denial of that postconviction petition remains pending before the state courts for review. Accordingly, any claim (including ground thirteen) predicated on the illegality of the procedures employed by the police in questioning A.I. and S.M. has not yet been fairly presented to the Minnesota Supreme Court.

### 3.    Exculpatory Statements by S.M.

Two persons, A.I and S.M., stood outside with A.H. in the minutes before he was slain. One of those persons, A.I., testified at trial that Abdillahi was the hooded assailant seen on surveillance video. Throughout his petitions for postconviction review, Abdillahi has challenged the veracity of that testimony. In one way or another, the truthfulness of A.I.'s testimony is implicated by grounds one, two, three, four, and eight of the original habeas corpus petition. Respondent concedes that these claims are exhausted, and this Court agrees.

Unlike A.I., "S.M. refused to testify [at trial] and was held in contempt of court." *Abdillahi III*, 2015 WL 4877721, at *1. But like A.I., S.M. had been questioned by police after the murder. According to Abdillahi, S.M. stated during questioning that Abdillahi was not the man in the hood who shot A.H. (*See* Am. Pet. at 3.) The failure to disclose this exculpatory statement to the defense, argues Abdillahi, was a violation of *Brady*. Not until his fourth petition for post-conviction review was this claim regarding S.M.'s pretrial statements raised, and because the appeal of that petition is pending, the claim has not yet been fairly presented to the Minnesota Supreme Court.

### 4.    Actual Innocence

Finally, in ground fourteen, Abdillahi claims that his is innocent of the offense for which he was convicted. (*See id.* at 4.) Abdillahi presented a claim of actual innocence in his second petition for postconviction relief, albeit one based on different evidence than the actual-innocence claim now before the Court. *See Abdillahi III*, 2015 WL 4877721, at *5. In any event, claims of actual innocence are not easily amenable to traditional exhaustion analysis, as a showing of actual innocence is sufficient to overcome the failure to exhaust and procedural default of *any* sufficiently meritorious claim for federal habeas corpus relief. *See Schlup v. Delo*, 513 U.S. 298, 315 (1995).

### B.    Is A Stay Warranted?

Thus, Respondent is correct that much of the amendment to the habeas petition has not been fairly presented to the Minnesota Supreme Court. The fact that those claims are now proceeding through the state courts, however, does not mean Abdillahi's federal habeas

corpus petition should be stayed as a matter of course in order to avoid dismissal. The
Supreme Court has cautioned that

> [S]tay and abeyance should be available only in limited circumstances.
> Because granting a stay effectively excuses a petitioner's failure to present his
> claims first to the state courts, stay and abeyance is only appropriate when the
> district court determines there was good cause for the petitioner's failure to
> exhaust his claims first in state court.

*Rhines*, 544 U.S. at 277. "Moreover, even if a petitioner had good cause for that failure, the
district court would abuse its discretion if it were to grant him a stay when his unexhausted
claims are plainly meritless." *Id.*

This Court concludes that a stay is inappropriate for two reasons. First, Abdillahi
cannot establish good cause for his failure to raise the claims in the amendment to his
petition earlier, as required by *Rhines*. Second, Abdillahi's attempt to prosecute the claims
at issue is futile, both because he is barred under state law from now raising the claims in
state court and because the claims lack merit.

### 1. Lack of Good Cause

When Abdillahi initiated these habeas corpus proceedings, he was in the midst of
litigating his third petition for postconviction relief — itself a rarity, as, under Minnesota
law, claims cannot be raised in a petition for postconviction relief that could have been
raised in an earlier proceeding. *See* Minn. Stat. § 590.01, subd. 1(2); *Knaffla*, 243 N.W.2d
at 741. A few months after review of that third petition was denied by the Minnesota
Supreme Court, Abdillahi submitted his *fourth* petition for postconviction review to the
Minnesota state courts. Abdillahi insists that he had good cause to wait until the fifth
challenge of his conviction — that is, the direct appeal plus four postconviction petitions —

to raise the claims that have not yet been fairly presented to the Minnesota Supreme Court. This Court is not convinced.

The central premise to Abdillahi's argument regarding good cause is that he "recently" learned from S.M. that law-enforcement officials had directed him to implicate Abdillahi in the murder. (*See* Pet.'s Aff. ¶ 3 [Doc. No. 27].) Without this newly discovered evidence, argues Abdillahi, he could not have brought the claims in the amendment to his habeas corpus petition previously. This explanation does not hold up to scrutiny. First, it does not explain why Abdillahi waited to bring the claim that the police offered enticements to the witness who *did* testify at trial — a claim that has nothing to do with S.M. Second, Abdillahi offered nearly identical claims of recanted testimony with respect to A.I. in his second petition for postconviction relief. *See Abdillahi III*, 2015 WL 4877721, at *2-5. Abdillahi could have pursued claims that S.M. had been similarly coerced into implicating him — the trial court granted an evidentiary hearing on the claim regarding A.I., and the factual circumstances under which S.M. was questioned were not altogether different — but he failed to do so.

The timing of Abdillahi's prosecution of his fourth petition for postconviction review is also irregular. Although Abdillahi attested to this Court in November 2016 that he "recently" learned of S.M.'s allegations, he waited until February 2017 to file his petition for postconviction review in state court raising claims based on those allegations. (*See* Pet.'s Fourth Pet. Postconviction Relief at 8 (dated Feb. 6, 2017).) Abdillahi's efforts at procuring relief in state court on his latest claims cannot be said to have been terribly

diligent, all things considered.  This Court cannot find good cause for the delay, and the lack of good cause precludes entry of a stay in this matter.

### 2.    Procedural Default and Success on the Merits

Even if there were good cause for Abdillahi to have waited over seven years after trial by raising the claims at issue in his fourth postconviction petition, this Court would nevertheless recommend denial of his motion for a stay.  This Court cannot "review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.  This rule applies whether the state law ground is substantive or procedural." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citations omitted).  Abdillahi's fourth petition for postconviction review was denied in its entirety by the trial court pursuant to *Knaffla*, as each of the claims either was raised, or could have been raised, in earlier proceedings.  (*See* Order at 16-20 [Doc. No. 50-3].)  *Knaffla* acts as adequate and independent state-law grounds for dismissal in state court and bars further litigation of the claims in that forum.  *Id.*; *McClendon v. Minnesota*, No. 13-cv-2368, 2014 WL 4722490, at *9 (D. Minn. Sept. 22, 2014).  By all indications, Abdillahi is procedurally barred under state law from raising the claims that he has not yet fairly presented to the Minnesota Supreme Court.[4]

---

[4]  Although this Court does not intend to intrude upon the consideration of a question of state law before the Minnesota appellate courts have had an opportunity to first decide that question, it must be noted for purposes of this Recommendation that the state trial court's

Both Abdillahi and Respondent overlook the effect of procedural default in this matter. The exhaustion requirement of § 2254 pertains "only to remedies still available at the time of the federal petition." *Gray v. Netherland*, 518 U.S. 152, 161 (1996) (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). "A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." *Coleman*, 501 U.S. at 732 (quoting 28 U.S.C. § 2254(b)). That is the case here; no remedies remain available to Abdillahi in state court for the claims raised in his fourth postconviction petition, because they are barred by *Knaffla*. And because no remedy remains available to Abdillahi in state court for any of the claims raised in these proceedings (either because they have already been raised or because they are barred by *Knaffla*), Abdillahi's habeas corpus petition is not a mixed petition in the sense that the term is used in *Lundy*. *See Gray*, 518 U.S. at 161-62 (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). Contrary to Respondent's assertion in the motion to dismiss, this Court may dismiss the procedurally defaulted claims, then go on to consider the merits of the claims that have been fairly presented to the state courts and therefore exhausted.

Turning back to Abdillahi's request for a stay, the state courts are highly unlikely to ever consider the merits of the claims that Abdillahi has not yet fairly presented to the Minnesota Supreme Court, because *Knaffla* precludes those courts from doing so. Abdillahi's claims are just as procedurally defaulted now as they will be after review of his

---

analysis with respect to *Knaffla* appears wholly correct. (*See* Order at 16-20 [Doc. No. 50-3].)

fourth petition for postconviction relief has concluded.  A stay of these habeas proceedings under *Rhines* while that petition for postconviction relief winds its way through the state courts would therefore accomplish nothing.  *See, e.g.*, *Krieger v. Minnesota*, No. 13-cv-1942 (JRT/HB), 2014 WL 7771778, at *1 (D. Minn. Sept. 5, 2014) (noting that procedural default entirely moots the issue of stay and abeyance).

Needless to say, although the procedural default of Abdillahi's latest claims means that the entire petition need not be dismissed as a mixed petition, procedural default does not act as a get-out-of-exhaustion-free card.  This Court's conclusion that certain of Abdillahi's claims are procedurally defaulted justifies not only denial of the request for a *Rhines* stay, but also dismissal of those defaulted claims.  *See Murray v. Carrier*, 477 U.S. 478, 497 (1986).

That said, a habeas petitioner may be entitled to review of his procedurally defaulted claims if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  This Court already concluded above that Abdillahi lacked good cause for failing to raise his claims earlier.  It is also difficult to see how Abdillahi could have been prejudiced by the default.  The first of the three defaulted claims — that inappropriate "favors" were provided to certain material witnesses — is wholly conclusory.  Abdillahi does not flesh out in his fourth petition for postconviction review (which has already been denied by the trial court) or accompanying documents what these "favors" entailed, and he offers no evidence, newly discovered or otherwise, in support of this claim.  (*See* Doc. Nos. 50-1 and 50-2.)  There is no reason

19

whatsoever to believe that this claim has any chance of success on the merits, and thus Abdillahi cannot be prejudiced by failure to raise the claim.

The remaining two claims are unlikely to fare any better on the merits, as both claims are substantially undercut by the facts of this case. With respect to the claim concerning unduly suggestive identification procedures, this is not a case in which the culprit was unknown to the eyewitnesses. For example, A.I. testified at trial that he had known Abdillahi for two and a half years prior to the murder. (*See* Pet.'s App. 1 at 147 [Doc. No. 22].) Further, A.I. testified that he also knew every other individual presented in the picture array used by police. *Id*. at 153. It is therefore hard to believe that there was much danger A.I. would misidentify Abdillahi during questioning. *See, e.g.*, *United States v. Gilbert*, 721 F.3d 1000, 1006 (8th Cir. 2013) (noting that courts must examine "whether under the totality of the circumstances the suggestive procedure creates a very substantial likelihood of irreparable misidentification."). To the extent Abdillahi argues that A.I. and S.M. were not merely misled, but *pressured*, into identifying him as the killer, and that this pressure contributed to the guilty verdict, this claim likewise does not stand up to scrutiny. To begin, no motive is offered as to why A.I. and S.M. would have been pressured by police into identifying Abdillahi, as opposed to anyone else, as the killer. Moreover, A.I. was cross-examined vigorously at trial regarding the identification and did not back down from his testimony implicating Abdillahi, even when presented with evidence that he had earlier waffled on Abdillahi's involvement in the murder. (Pet.'s App. 1 at 152-57.) The implicit finding by the jury that A.I. testified credibly was reasonable. And S.M. did not testify at all, electing to suffer a stint in jail under contempt of court rather than take the stand at the

behest of the prosecution.  Obviously, then, his identification of Abdillahi as the murderer to the police could not have contributed to the guilty verdict.

Finally, this Court must address Abdillahi's contention that he has made a sufficient showing of actual innocence to overcome the procedural default of his claims.  To make a sufficient showing of actual innocence to overcome procedural default, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" in light of the new evidence proffered.  *Schlup*, 513 U.S. at 327; *accord Dansby v. Hobbs*, 766 F.3d 809, 816 (8th Cir. 2014).  The evidence offered by Abdillahi in support of his claim of actual innocence is extraordinarily weak.  For one thing, Abdillahi attempts to rely upon statements of S.M. to the effect that he was pressured into implicating Abdillahi in the murder, but rather than offer a sworn statement from S.M. himself, Abdillahi offers only hearsay evidence by way of his own affidavit attesting that S.M. told *him* that S.M. had been pressured into implicating him in the murder.  *See* Abdillahi Affidavit [Doc. No. 27].  For another thing, even if it is true that S.M. has recanted what he told police — again, a questionable assumption, given that this evidence comes to the court only in the form of hearsay — S.M's identification of Abdillahi ended up serving no purpose whatsoever to the prosecution, as S.M. refused to testify at trial. Nothing about the finding of guilt was predicated upon S.M.'s earlier identification of Abdillahi.  Thus, S.M.'s repudiation of having tagged Abdillahi as the killer, even if accepted as true, is insufficient to conclude that "no reasonable juror would have found

petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327. Abdillahi has not made an adequate showing of actual innocence.[5]

Abdillahi's motion for a stay will therefore be denied. Insofar as Respondent seeks dismissal of the *entire* petition for failure to exhaust state remedies, that motion will also be denied, because Abdillahi's petition is not a mixed petition within the meaning of *Lundy*. The motion to dismiss is granted, however, insofar as the claims in the amendment to the petition that have not been fairly presented to the Minnesota Supreme Court will be dismissed with prejudice as procedurally defaulted. *See Feeney v. Auger*, 808 F.2d 1279, 1280 (8th Cir. 1986); *Beaulieu v. Jesson*, No. 13-cv-1893 (DWF/JSM), 2013 WL 6058967, at *7 (D. Minn. Nov. 15, 2013).

## III.    Abdillahi's Habeas Corpus Petition

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standards that govern this Court's substantive review of Abdillahi's habeas corpus claims. The relevant portion of AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

---

[5] To the extent that Abdillahi intends to argue that other evidence outside what is mentioned in ground fourteen of the petition establishes actual innocence sufficient to overcome procedural default, this Court disagrees. As explained at greater length with respect to Abdillahi's claims for relief, the evidence marshaled by Abdillahi in attacking the verdict lacks credibility.

established Federal law, as determined by the
Supreme Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light
of the evidence presented in the State court
proceeding.

In *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court

discussed § 2254(d)(1) and how it should be applied by federal district courts. The

Supreme Court recognized that

a state-court decision can be "contrary to" this Court's clearly
established precedent in two ways. First, a state-court
decision is contrary to this Court's precedent if the state court
arrives at a conclusion opposite to that reached by this Court
on a question of law. Second, a state-court decision is also
contrary to this Court's precedent if the state court confronts
facts that are materially indistinguishable from a relevant
Supreme Court precedent and arrives at a result opposite to
ours.

*Id*. at 405.

"Under the 'unreasonable application' clause, a federal habeas court may grant the

writ if the state court identifies the correct governing legal principle from [the Supreme]

Court's decisions but unreasonably applies that principle to the facts of the prisoner's

case." *Id*. at 413. The Supreme Court also explained that

[a] federal habeas court making the "unreasonable
application" inquiry should ask whether the state court's
application of clearly established federal law was objectively
unreasonable. . . . [A] federal habeas court may not issue the
writ simply because that court concludes in its independent
judgment that the relevant state-court decision applied clearly
established federal law erroneously or incorrectly. Rather,
that application must also be unreasonable.

*Id*. at 409, 411.

A writ of habeas corpus may also be available where the state court's resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be granted if the conviction is based on findings of fact that could not reasonably be derived from the state court evidentiary record. When reviewing a state court decision, however, "a federal court . . . presumes that the state court's factual determinations are correct; this presumption may be rebutted only by clear and convincing evidence." *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000). In addition, 28 U.S.C. § 2254(e)(1) provides that

> [i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

A federal district court is not allowed to conduct its own de novo review of a prisoner's constitutional claims. *See Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) ("We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a *de novo* matter."). "AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations and quotations omitted). Habeas relief cannot be granted unless the petitioner has identified and substantiated a specific error committed by the state courts. Moreover,

24

the petitioner must show that the state courts committed the type of error that is

actionable under § 2254(d), as that statute has been interpreted by the Supreme Court.

Finally, the petitioner "must show that the state court's ruling on the claim being

presented in federal court was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).


### 1.    Ground One — Veracity of A.I.'s Testimony

Four people were near the scene of the murder shortly before it took place: the

victim, the killer, S.M., and A.I.  S.M. refused to testify at trial, *see Abdillahi III*, 2015

WL 4877721, at *1, leaving A.I. as the only possible source of eyewitness evidence about

the identity of the killer.  A.I.'s testimony was therefore critical to identifying Abdillahi

as the obscured, hooded individual in the surveillance footage who shot and killed A.H.

 In October 2009, not long after Abdillahi's trial had concluded, A.I. was himself

murdered.  *Id*. at *1.  In 2013, Abdillahi filed his second petition for postconviction relief.

Among the claims raised in that petition was that, before his murder, A.I. had recanted

his trial testimony in a conversation with his brother (H.I.) and another individual (A.A.).

*Id*. at *2-4.  The trial court held an evidentiary hearing in which those individuals

testified that A.I. had told them (1) he had not even been at the scene of the crime, and

(2) he had felt that his life was threatened if he did not testify against Abdillahi.  (*See*

Doc. No. 52-3 at 15-17.)

The trial court rejected the testimony of H.I. and A.A. on two grounds.  First, the
evidence was inadmissible hearsay under Minnesota law.  (*See id.* at 12-15.)  Second,
even if the evidence were not inadmissible hearsay, the testimony offered by H.I. and
A.A. was not credible.  The circumstances of how the proffered testimony was put
forward were odd.  Both H.I. and A.A. had waited several years to reveal the alleged
recantation, with no obvious reason or plausible explanation for the lengthy delay.
Further, the testimony of both H.I. and A.A. was plainly erroneous in certain respects,
undercutting their credibility further.  For example, both witnesses said that A.I. had told
them that he had not even been at the mall where A.H. was murdered on the night in
question, but a surveillance video placed A.I. at the scene of the crime.  (*Id.* at 15-17.)
The trial court therefore rejected the testimony and denied Abdillahi's claim for relief.
The Minnesota Court of Appeals affirmed.

In ground one of his habeas corpus petition, Abdillahi essentially restates this
claim, arguing that the testimony offered by H.I. and A.A. at the evidentiary hearing
should be regarded as credible and that A.I.'s trial testimony should be regarded as false
and therefore unavailable to support the verdict.  (*See* Pet. at 8-9.)  Under § 2254(e)(1),
"a determination of a factual issue made by a State court shall be presumed to be correct
[on habeas review].  The applicant shall have the burden of rebutting the presumption of
correctness by clear and convincing evidence."  A state court's "credibility
determinations are owed the same deference as their factual findings."  *Grass v. Reitz*,
749 F.3d 738, 744 (8th Cir. 2014).  There is little basis in the record before this Court,
much less "clear and convincing evidence," 28 U.S.C. § 2254(e)(1), that the trial court's

credibility determination with respect to the testimony of H.I. and A.A. was incorrect.  To the contrary, the trial court's credibility determination was well grounded, for the reasons explained in the order denying postconviction relief.  (*See* Doc. No. 52-3 at 15-17.)  And ground one leans entirely upon the evidence put forward by H.I. and A.A.; Abdillahi cannot otherwise establish that A.I.'s testimony at trial was false, and thus cannot establish that his due process rights were violated due to the admission of that testimony.[6] Ground one fails with the rejection of that evidence and should therefore be denied.

### 2.    Ground Two — *Brady* Violations

In the months between the September 2008 murder and the June 2009 trial, A.I. spoke with the police twice and the prosecutor once on subject matter relevant to Abdillahi's habeas corpus petition.  At an initial interview with police conducted on October 13, 2008, A.I. told law-enforcement officials that he could not identify the person who walked past him just before the time of the murder (and who was seen shooting A.H. in surveillance footage) because the person's hand and shirt were covering his face.  (*See* Pet.'s App. 1 at 150.)  When presented with a photo array of six individuals that included Abdillahi, A.I. admitted to knowing the other five individuals (that is, everyone but Abdillahi), said something to the effect that he did not want to

---

[6] Abdillahi criticizes that the Minnesota Court of Appeals treated his claim purely as one of state law (that is, whether the testimony of H.I. and A.A. was admissible under the Minnesota Rules of Evidence) rather than as a federal due process claim.  But both the federal law and state law claims turn on the same question: Was the post-trial testimony of H.I. and A.A. credible?  The trial court found the testimony was not credible, the Minnesota Court of Appeals affirmed that finding — concluding that because the evidence was not credible, it could not be regarded as admissible evidence — and Abdillahi has not rebutted that factual finding by clear and convincing evidence.

implicate an innocent person, and picked Abdillahi out of the lineup as the shooter.  (*See id.* at 153-57.)  The trial transcript reflects that Abdillahi's trial counsel had in his possession a transcript of this police interview.  (*See id.* at 155.)

A.I. spoke again with police on or about December 30, 2008.  (*See id.* at 131.)  This time, A.I. was far more direct in implicating Abdillahi, telling police that he had recognized and even briefly exchanged words with Abdillahi just prior to the murder.  The December 30 statement to police largely matched how A.I. later testified at trial — testimony that was integral to the prosecution's case in placing Abdillahi at the scene of the crime.

On November 6, 2008, after the first but before the second of those police interviews, A.I. spoke with the prosecutor about the murder.  This interview is the subject of the claim under *Brady* brought by Abdillahi in ground two of the habeas petition.  At trial, the prosecutor questioned A.I. about what he said at that interview and used a memorandum prepared by her assistant shortly after the interview in order to refresh A.I.'s memory.  (*See id.* at 129-30.)  Abdillahi's trial counsel remarked that he did not have a copy of the memorandum being used to refresh A.I.'s memory.  (*See id.* at 130.)  The judge afforded Abdillahi's defense counsel an opportunity to review the memorandum, *see id*., and the prosecutor then proceeded to question A.I. about the interview.  A.I. confirmed that, just as the first time he was questioned by police, he had told the prosecutor that he identified Abdillahi "because [he] knew everybody else in the lineup."  (*Id.* at 131.)  The document used to refresh A.I.'s memory was not admitted into or used as evidence.

In March 2014, Abdillahi sought relief in state court on the basis that his trial counsel did not receive the memorandum used to refresh A.I.'s memory. *See Abdillahi IV*, 2016 WL 4069294, at *4-5. The prosecution soon thereafter produced a short memorandum that, by all appearances, was written by the prosecutor's assistant on the day of the November 6, 2008, interview of A.I. As relevant to Abdillahi's habeas corpus petition, the memorandum stated that A.I. "said that he knew every one in the line-up except one person" — in other words, A.I. told the prosecutor on November 6 the same thing he testified at trial he had told the police on October 13. (Pet.'s App. 2 at 1 [Doc. No. 33-1].) Both the first statement to police and the statement to the prosecutor contradicted A.I.'s trial testimony, and the defense counsel attempted to impeach Abdillahi's testimony by drawing out those discrepancies.

Abdillahi contends that the short memorandum produced by the Government during the litigation of the postconviction proceedings in state court is a *different* memorandum from the one actually used at trial to refresh A.I.'s memory. (*See* Pet. at 11-12.) Further, Abdillahi alleges that the second, unproduced memorandum contained additional exculpatory information that was withheld from the defense. (*Id.*)

"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The Supreme Court has set forth the "three components or essential elements of a *Brady* prosecutorial misconduct claim: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence

29

must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

The trial court denied Abdillahi's *Brady* claim, as raised in the third petition for postconviction review, as barred under *Knaffla* on the basis that Abdillahi could have raised the claim in an earlier proceeding. (*See* Resp't Ex. at 14-16 [Doc. No. 52-4].)  The Minnesota Court of Appeals assumed that *Knaffla* did not control due to Abdillahi's allegations that he did not learn of the *Brady* issue until approximately one month before he raised it. *See Abdillahi IV*, 2016 WL 4069294, at *3-4.  Nevertheless, the Minnesota Court of Appeals affirmed the denial of the claim.  The Minnesota Court of Appeals found that Abdillahi had established the first two prongs of *Brady*, as the summary of A.I.'s pretrial statements was potentially exculpatory or impeaching, and Abdillahi's trial counsel had written a letter stating that "counsel believes he did not receive the memorandum [summarizing A.I.'s interview] before or during trial," thereby establishing suppression. *Id*. at *4.  The *Brady* claim was denied, however, on the grounds that Abdillahi had not shown that the suppression of the memorandum was prejudicial. *Id*. at *4-5.  Abdillahi had argued that the suppressed memorandum was material because it revealed that A.I. did not want to testify before the grand jury and that A.I. told the prosecutor he did not see the face of the assailant at the scene of the crime. *Id*. at *5.  But the first of these alleged statements was irrelevant, while the second had been amply covered during the questioning of A.I. with respect to his first police interview. *Id*.

This Court agrees with the Minnesota Court of Appeals that any failure to disclose the statements of A.I. cited by Abdillahi in his habeas corpus petition, even taking his allegations as true, could not have caused prejudice. Before reaching the issue of prejudice, however, this Court notes that the finding that *any* memorandum arising out of the November 6 interview was suppressed by the prosecution is not supported by the record. The sole basis for the finding that the prosecution had suppressed evidence was, in the words of the Minnesota Court of Appeals, "a letter from his trial counsel stating that counsel believes he did not receive the memorandum before or during trial." *Abdillahi IV*, 2016 WL 4069294, at *4. But this is not an entirely accurate summary of the attorney's letter, which stated only that he believed he had not received the statement *prior* to trial. (*See* Pet.'s App 2 at 2-3 [Doc. No. 33].) More importantly, the trial record clearly and unequivocally reflects that Abdillahi's trial counsel was afforded the opportunity to review the memorandum used to refresh Abdillahi's recollection. (*See* Pet.'s App 1 at 130.) "Under the rule in our circuit *Brady* does not require pretrial disclosure, and due process is satisfied if the information is furnished before it is too late for the defendant to use it at trial." *United States v. Almandares*, 397 F.3d 653, 664 (8th Cir. 2005) (citing *Nassar v. Sissel*, 792 F.2d 119, 121 (8th Cir. 1986)). Without question, the memorandum at issue was, at the very latest, disclosed and made available to defense counsel prior to the cross-examination of A.I. — a cross-examination that included a recess during which the memorandum could have been further reviewed by defense counsel, if necessary. (*See* Pet.'s App. 1 at 130, 145-46.) The finding that any

materials had been suppressed throughout the trial is not supported — indeed, is affirmatively contradicted — by the evidence in the record.[7]

Leaving that aside, the finding of the Minnesota Court of Appeals that Abdillahi had not shown the allegedly suppressed documents to have been material was objectively reasonable.  A.I. admitted at trial that his statements to the prosecutor on November 6 (and his statements to police on October 13) differed from his trial testimony, and Abdillahi's defense counsel vigorously attacked A.I.'s credibility on those grounds.  (*See* Pet.'s App. 1 at 149-57.)  A memorandum showing that A.I. told the prosecutor that the assailant's face had been obscured at the time of the murder — the only relevant, exculpatory material posited by the habeas petition about the memorandum used to refresh A.I.'s memory (*see* Pet. at 12) — would have been entirely cumulative of the testimony admitted at trial that he had at first told the police that the assailant's face was obscured.

In short: The evidence presented to the Minnesota Court of Appeals does not support a finding that any pretrial statement of A.I. was suppressed in violation of *Brady*. But if any such statement was suppressed, Abdillahi has not adequately alleged how the

---

[7]  It is worth stressing that Abdillahi's speculation about a second memorandum is largely beside the point.  Regardless of whether the memorandum turned over by the Government in 2014 was the document used at trial to refresh A.I.'s recollection — and the brief description of the document on the record at trial matches the document turned over in 2014 — the record shows that the document *actually used at trial*, whatever that document might have been, was provided to defense counsel.  (*See* Pet.'s App. 1 at 130.) Further, Abdillahi himself asserts that the document turned over to defense counsel at trial, rather than the one produced in 2014, was the memorandum that contained the additional exculpatory information.  (*See* Pet. at 11-12.)

Minnesota Court of Appeals was objectively unreasonable in finding that the statement was material. Ground two should be denied.

### 3.    Ground Three — Spoliation of Evidence

Ground three of the habeas corpus petition relates to ground two. In ground two, Abdillahi claimed that the prosecution had suppressed material evidence. In ground three, Abdillahi argues that the Government should be compelled to produce the suppressed evidence — and if the Government is unable to do so, this would justify habeas corpus relief due to the suppressed evidence having presumably been destroyed. (*See* Pet. at 14.) As the Minnesota Court of Appeals correctly noted, this claim is entirely speculative; Abdillahi does not (and cannot) affirmatively argue that the prosecution has in fact destroyed anything. *See Abdillahi*, 2016 WL 4069294, at *3. Further, this Court (as well as the Minnesota Court of Appeals) has already concluded that Abdillahi has failed to demonstrate how the putatively suppressed evidence was material; Abdillahi could not have been prejudiced by the destruction of non-material evidence. Ground three is without merit.

### 4.    Ground Four — Prosecutorial Misconduct with respect to A.I.

In ground four, Abdillahi alleges that the prosecutor committed misconduct by (1) failing to correct A.I.'s allegedly false trial testimony; (2) misrepresenting that she had disclosed A.I.'s pretrial interview statements; and (3) impeding Abdillahi's ability to present a defense by allowing the false testimony to be admitted. Abdillahi's claims of

prosecutorial misconduct are simply restatements of grounds one and two above.[8]  But as this Court has already explained, Abdillahi has not shown that A.I.'s testimony was false, and the pretrial statements alleged to have been suppressed were not material.  Ground four fails alongside grounds one and two.

### 5.    Ground Five — Racial Bias

Several months after trial concluded, the prosecutor wrote on a social-media website that "she had to 'keep the streets of Minneapolis safe from the [sic] Somalias.'" *Abdillahi III*, 2015 WL 4877721, at *6 n.3.[9]  Abdillahi contends that "[t]his information combined with the prosecution's conduct during pretrial, trial, and post-trial proceedings, indicates that the prosecution was racially biased and improperly motivated."  (Pet. at 19.)  Like the Minnesota Court of Appeals in review of Abdillahi's second petition for postconviction relief, this Court interprets Abdillahi's claim as one of selective prosecution in violation of the equal-protection clause.  *See Abdillahi III*, 2015 WL 4877721, at *6.  The claim is implausible; as the Minnesota Court of Appeals noted, the crime for which Abdillahi was convicted — second-degree murder — was unlikely to be selectively prosecuted, and Abdillahi offers no evidence that similarly situated

---

[8]  Ground four does encompass the claim — slightly different from the claim raised in ground two — that the prosecutor misstated that she had provided a memorandum of A.I.'s statements on November 6, 2008, to defense counsel before trial.  (*See* Pet.'s App. 1 at 130.)  Abdillahi cannot show prejudice from the misstatement because, as explained with respect to ground two, the statement was not suppressed; Abdillahi's attorney was given an opportunity to review the memorandum prior to cross-examination.  (*Id.*)

[9]  Abdillahi did not submit the posting itself as evidence to the state courts, but instead relied upon affidavits from public defenders attesting to the fact of the posting.  *See Abdillahi III*, 2015 WL 4877721, at *6 n.3.  This Court assumes, for the purposes of this analysis, that the prosecutor did in fact make the comments at issue.

defendants of other races have not been prosecuted for similar offenses. *Id.* This finding of the Minnesota Court of Appeals was neither an unreasonable application of federal law nor founded upon an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)-(e).

This is not to condone the prosecutor's statement. But it is difficult to see how the comment — or the motivations that led to the comment — in fact deprived Abdillahi of a fair trial.[10] This claim should be rejected.

### 6.    Ground Six — Veracity of K.O.'s Testimony

K.O. testified at trial that, two weeks before the murder, Abdillahi said that he would kill A.H. at the end of September 2008.[11] *See Abdillahi I*, 2011 WL 691623, at *2. On direct appeal, Abdillahi argued that K.O.'s testimony was not credible, as it had been rebutted by other witnesses. The Minnesota Court of Appeals rejected the challenge, noting that "it is the role of the jury, not this court, to evaluate witness credibility." *Id.*

In his second petition for postconviction review, Abdillahi again argued that K.O. had testified untruthfully, this time citing new evidence in the form of testimony from another individual, Ah.A., that K.O. had told him that the statement given at trial that Abdillahi had threatened to kill A.H. had been false. The trial court conducted an evidentiary hearing on the claim, but also ruled that the testimony of Ah.A. was hearsay

---

[10]  This Court has already reviewed Abdillahi's other claims of prosecutorial misconduct in conjunction with ground four of the habeas petition and has found that he is not entitled to relief on those claims.

[11]  The shooting took place on September 29, 2008. *See Abdillahi IV*, 2016 WL 4069294, at *1.

35

that would be admitted only if K.O. were unavailable to testify within the meaning of

Minn. R. Evid. 804(a). Abdillahi had argued that K.O. was not mentally competent and

therefore could not testify about what he might have said to Ah.A. after the trial. Prior to

the hearing, a licensed psychologist evaluated K.O. and concluded that K.O. had the

mental capacity to understand the nature of the proceedings and testify with sufficient

rational understanding. K.O. was therefore permitted to testify at the evidentiary hearing

on the second postconviction petition, at which he reasserted that Abdillahi had

threatened to kill A.H. in the weeks before the trial. Having observed the testimony, the

trial court confirmed that K.O. was competent to testify, thus rendering Ah.A.'s

testimony inadmissible under state law. Further, the trial court found K.O.'s testimony at

the postconviction hearing to be credible. Abdillahi's claim about the veracity of K.O.'s

trial testimony was again rejected.

Abdillahi argues that the admission and continued acceptance of K.O.'s testimony

violates his federal right to due process. At bottom, Abdillahi challenges the credibility

determinations implicit in the jury's verdict and explicit in the trial court's order denying

postconviction relief. On habeas review, credibility determinations are owed the same

deference as other factual findings, *see Grass v. Reitz*, 749 F.3d 738, 744 (8th Cir. 2014),

and the presumption that these credibility findings are correct may be overcome only

through clear and convincing evidence, *see* 28 U.S.C. § 2254(d)(2). Nothing in the

record comes close to rebutting the finding that K.O. was a credible witness. Nor can this

Court conclude that the trial court erred in finding K.O. competent to testify; again,

nothing close to the "clear and convincing evidence" needed to rebut the presumption of

correctness can be found in the record.  Finally, the trial court's rejection of Ah.A.'s

testimony as inadmissible hearsay — the only additional piece of evidence directly

contradicting K.O.'s account — was imminently reasonable as a matter of federal law.

*See Rainer v. Dep't of Corrections*, 914 F.2d 1067, 1072 (8th Cir. 1990) ("The inquiry

[on federal habeas review] is not 'whether the trial court erred in admitting the particular

[evidence],' but 'whether the admissions resulted in a trial so fundamentally unfair as to

deny [the petitioner] due process of law.'" (quoting *Hobbs v. Lockhart*, 791 F.2d 125,

127-28 (8th Cir. 1986)).  Ground six should be denied.

### 7.    Ground Seven — Admission of *Spreigl* Evidence

At trial, the state's theory of Abdillahi's motive was that A.H.'s murder had been

part of a chain of retaliatory violence that included both Abdillahi's earlier shooting of

S.A. in 2007, and S.A.'s shooting of Abdillahi's cousin in April 2008.  *Abdillahi I*, 2011

WL 691623, at *3-4.  S.A. had thereafter fled the country, and murder victim A.H. was a

friend of S.A.; the state's argument went that Abdillahi set his sights on A.H. in

retaliation for S.A.'s earlier misdeeds.  At trial, the district court admitted *Spreigl*

evidence showing that Abdillahi had, in fact, shot S.A. in 2007.  *See Abdillahi I*, 2011

WL 691623, at *2.  On direct appeal, Abdillahi argued that the evidence should have

been excluded, as it was not relevant to the murder and unduly prejudicial.  *Id*. at *3-4.

The Minnesota Court of Appeals disagreed, noting that the earlier shooting was relevant

to establishing motive, which had been contested by Abdillahi.  *Id*.

In his first petition for postconviction relief, Abdillahi took another run at

challenging the district court's admission of the contested evidence.  The renewed

challenge partly mirrored the claims about irrelevance and prejudice that he raised on
direct appeal, but Abdillahi also offered "newly discovered evidence" in the form of an
affidavit from I.M., who attested that S.A. had been trying to shoot *him*, not Abdillahi's
cousin, and thus Abdillahi had no reason to try to seek revenge on S.A.  The renewed
challenge was also rejected by the district court, and the Minnesota Court of Appeals
affirmed.  To the extent that Abdillahi's claim was not predicated upon the affidavit of
I.M., that claim was barred by *Knaffla*, as it either was litigated, or could have been
litigated, on direct appeal.  *See Abdillahi II*, 2013 WL 2924900, at *8-9.  Regarding the
aspect of the claim predicated upon the newly discovered evidence (I.M.'s affidavit), the
Minnesota Court of Appeals found that even if the statements in the affidavit were
accepted as true, it did not establish that Abdillahi was actually innocent of the murder,
and "newly discovered evidence that is irrelevant to a conviction does not require any
relief because it could not establish that the defendant is innocent."  *Id*. at *9.  Further,
explained the Minnesota Court of Appeals, even if S.A. had *intended* to kill I.M., the
state's theory regarding motive nevertheless would have held up if Abdillahi *believed* at
the time of A.H.'s murder that S.A. had intended to kill his cousin.  In other words, the
newfound evidence that Abdillahi's cousin was not S.A.'s target could not have been
relevant to Abdillahi's motive at the time of the murder.  *Id*.

    "A state court's evidentiary ruling is a matter of state law, and [the Court] may
examine the ruling in a habeas proceeding only to determine whether the asserted error

denied due process."[12]  *Bailey v. Lockhart*, 46 F.3d 49, 50 (8th Cir. 1995) (per curiam).

"The inquiry is not 'whether the trial court erred in admitting the particular [evidence],'

but 'whether the admissions resulted in a trial so fundamentally unfair as to deny [the

petitioner] due process of law.'"  *Rainer*, 914 F.2d at 1072 (quoting *Hobbs*, 791 F.2d at

127-28).  This Court cannot say that the admission of the *Spreigl* evidence at trial

rendered the proceedings fundamentally unfair.  There was little risk that the jury would

conflate the 2007 shooting with the 2008 murder that comprised the charged offense, as

the two incidents were factually dissimilar.  *See Abdillahi I*, 2011 WL 691623, at *4.

Further, the evidence was reasonably related to the state's proffered motive for the attack

— a motive that Abdillahi had cast into dispute at trial.  *Id*.  Admission of the evidence

under the circumstances was far from "an unreasonable application of[] clearly

established Federal law."  28 U.S.C. § 2254(d)(1).

Nor was it an unreasonable application of federal law to deny relief on the *Spreigl*

claim brought in the postconviction proceedings, notwithstanding I.M.'s affidavit.  This

Court shares the same concern raised by the Minnesota Court of Appeals — specifically,

that even if S.A. did not intend to kill Abdillahi's cousin, his true intentions are irrelevant

---

[12]  On both occasions that Abdillahi challenged the admissibility of *Spreigl* evidence, the
Minnesota Court of Appeals treated his claims as raising issues only of state law, not of
federal law.  But Abdillahi's briefing on direct appeal at least gestures towards the claim
that admission of the *Spreigl* evidence violated his federal due process rights, and his
briefing on appeal of the denial of the first petition for postconviction relief directly raises
a federal claim, so this Court will consider the merits of that federal claim.

if Abdillahi believed at the time of the murder that S.A. had intended to kill his cousin.[13]
As explained by the Minnesota Court of Appeals, "[b]ecause the affidavit of the witness
would have been irrelevant to appellant's state of mind at the time of the criminal act, it
would have been inadmissible and therefore could not have changed the result of the
trial." *Abdillahi II*, 2013 WL 2924900, at *9.  This Court agrees.  Ground seven is
without merit.

### 8.    Grounds Eight through Ten — Ineffective Assistance of Counsel

In grounds eight, nine, and ten of his habeas corpus petition, Abdillahi alleges that
his trial counsel was ineffective in three specific respects: (1) failing to conduct an
investigation regarding the pretrial statements made by A.I. that were the subject of
ground two; (2) failing to object to testimony of M.Y. implicating him in the murder on
the grounds that the testimony lacked foundation; and (3) failing to call a witness to rebut
K.O.'s trial testimony.  (*See* Pet. at 26-31.)  These ineffective-assistance claims were
raised in a pro se supplemental brief on direct appeal and tersely rejected by the
Minnesota Court of Appeals: "We have thoroughly reviewed all of appellant's [pro se]
arguments and conclude they are entirely without merit."  *Abdillahi I*, 2011 WL 691623,
at *9.

To prevail on a claim of ineffective assistance of counsel, a claimant must show
that his counsel's performance fell below an objective standard of reasonableness, *see*
*Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), and that there is a reasonable

---

[13]  The premise of Abdillahi's postconviction claim that he would not have had a motive
to kill A.H. had he known that S.A.'s shooting of his cousin was merely unintentional is
also not free from doubt.

probability that, but for his counsel's errors, the result of his proceeding would have been different, *id*. at 694. "The first prong requires a showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *White v. Dingle*, 757 F.3d 750, 752 (8th Cir. 2014) (quotations omitted). "The second prong requires a showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 753 (quotations omitted). The claimant bears the burden of establishing both *Strickland* prongs. *Thomas v. United States*, 737 F.3d 1202, 1207 (8th Cir. 2013) (objective-standard-of-reasonableness prong); *Becht v. United States*, 403 F.3d 541, 549 (8th Cir. 2005) (prejudice prong). "'Failure to establish either *Strickland* prong is fatal to an ineffective-assistance claim.'" *United States v. Kehoe*, 712 F.3d 1251, 1253 (8th Cir. 2013) (quoting *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011)).

The task of proving ineffective assistance of counsel on habeas review is challenging. "If a state court has already rejected an ineffective-assistance claim, a federal court may grant habeas relief if the decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (quoting 28 U.S.C. § 2254(d)(1)). Abdillahi must show not only that he was denied effective assistance of counsel, but that the Minnesota Court of Appeals' ruling on his ineffective-assistance claim was an error "beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. This standard is, and was meant to be, difficult to meet. *See Burt v. Titlow*, 134 S. Ct. 10, 16 (2013).

None of Abdillahi's claims of ineffective assistance clears this high bar. With respect to the claim that the trial counsel should have conducted a more rigorous investigation of A.I.'s pretrial statements, Abdillahi cannot show how he was prejudiced by the supposed failure. As this Court explained in the discussion of ground two, the record simply does not reflect that the Government suppressed evidence about A.I.'s pretrial statements to the prosecutor; the document at the center of the supposed suppression was made available to defense counsel prior to A.I.'s cross-examination. (*See* Pet. App. 1 at 130.) Trial counsel therefore had the opportunity — and, what's more, *availed* himself of the opportunity — to question A.I. about the inconsistency of his statements prior to trial. There is no reason to believe, either from allegations in the habeas petition or from evidence in the record, that further investigation of the matter would have been of any benefit to Abdillahi. Thus, Abdillahi cannot show that the Minnesota Court of Appeals was objectively unreasonable in denying this claim.

Abdillahi's next claim of ineffective assistance relates to testimony offered at trial by witness M.Y. that, on the night of the murder, she overheard a telephone conversation in which A.I. stated that Abdillahi had killed A.H. Abdillahi's attorney objected to the evidence on the basis that it was hearsay, but the objection was overruled. (*See* Pet. at 28.) Abdillahi argues that the trial counsel should have objected on a different basis — that A.I.'s statement that Abdillahi was the killer lacked foundation, as (by A.I.'s own admission) he did not see the shooting occur. *Id.*

Abdillahi misunderstands Minnesota Rule of Evidence 602, which, like its federal counterpart, states that "[a] witness may not testify to a matter unless evidence is

introduced sufficient to support a finding that the witness has personal knowledge of the matter." M.Y. did not testify that Abdillahi had in fact killed A.H., a matter about which she could not have known. Instead, M.Y. testified about a conversation to which she had direct knowledge, as she had been present at the time of that conversation.[14] Any objection to M.Y.'s testimony under Rule 602 was doomed to failure.

Finally, Abdillahi contends that his trial counsel should have called witness S.G. to contest K.O.'s testimony that Abdillahi had threatened to kill A.H. two weeks before the murder occurred. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Strickland*, 466 U.S. at 690; *accord Bahtuoh v. Smith*, 855 F.3d 868, 873 n.2 (8th Cir. 2017). Abdillahi's defense counsel had already offered evidence rebutting K.O.'s testimony and could have concluded for any number of reasons that putting yet another witness on the stand to rebut that testimony might carry more danger than it was worth. Moreover, Abdillahi's claim of prejudice resulting from the failure to call S.G. as a witness is tenuous. Even had S.G. adequately rebutted the testimony of K.O. in the minds of the jurors where others had failed (which is itself doubtful), the loss of K.O.'s testimony would have been only a glancing blow to the Government's case, which still would have included an identification of Abdillahi at the murder scene, a motive for the killing, and statements in the immediate aftermath of the shooting that Abdillahi had been the killer. Abdillahi

---

[14] Even if this Court were to accept Abdillahi's framing of the issue that M.Y. could not testify about what A.I. said unless A.I. had personal knowledge of the killing, there was ample basis for A.I. to conclude in the immediate aftermath of the shooting that Abdillahi had been A.H.'s killer, even if he did not see the shooting occur.

cannot establish that the Minnesota Court of Appeals' finding that he had not established both prongs of *Strickland* was objectively unreasonable.

### 9.    Grounds Eleven and Twelve — Ineffective Assistance of Appellate Counsel

Abdillahi submits two grounds for relief predicated upon the alleged ineffective assistance of his appellate counsel.  (*See* Pet. at 32-35.)  In the first, Abdillahi alleges that his appellate counsel was laboring under a conflict of interest that precluded him from prosecuting ineffective-assistance claims against his trial counsel on direct appeal.  In the second, Abdillahi argues that even apart from any conflict of interest, appellate counsel was ineffective insofar as he refused to assist in pursuing ineffective-assistance claims against trial counsel.  These grounds for relief were the primary basis for Abdillahi's first petition for postconviction relief in state court and have been fully exhausted.  *See Abdillahi II*, 2013 WL 2924900, at \*5-7.

"A claim for ineffective assistance of counsel arising from a conflict of interest does not require proof of the prejudice component of the *Strickland* test.  Rather, the petitioner can establish a Sixth Amendment violation if he can demonstrate that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Johnson v. Norris*, 207 F.3d 515, 519 (8th Cir. 2000) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)).  "The question whether a conflict of interest was present that could support a finding of ineffective assistance of counsel is also a mixed question of law and fact requiring 'application of legal principles to the historical facts of [the] case.'" *United States v. Auerbach*, 745 F.2d 1157, 1161 n.3 (8th Cir. 1984) (citing *Cuyler*, 446 U.S.

at 342).

The heart of Abdillahi's conflict-of-interest claim is that his appellate counsel and trial counsel had been close friends and that his appellate counsel was therefore reluctant to pursue ineffective-assistance claims against the trial counsel. (*See* Pet. at 32.) The state trial court held an evidentiary hearing on this claim, at which the appellate counsel testified that "he was not friends with appellant's trial counsel, although he knew him from some time ago, and that he would not have declined to pursue a viable ineffective-assistance-of-trial-counsel claim if it were presented in the record." *Abdillahi III*, 2013 WL 2924900, at *3. By contrast, Abdillahi, his uncle, and his grandfather testified that the appellate counsel had told them that he was good friends with Abdillahi's trial counsel. The trial court "concluded, largely on the basis of credibility determinations, that there was no conflict of interest preventing [appellate counsel] from providing effective representation." *Abdillahi II*, 2013 WL 2924900, at *4.

Embedded within the conclusion of the trial court was the factual finding that the appellate counsel did not have a personal relationship with trial counsel. This factual finding must "be presumed to be correct," and that presumption may only be overcome "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Abdillahi offers essentially nothing to overcome the presumption that the trial court's factual findings are correct in this regard. And once those factual findings are accepted, Abdillahi's conflict-of-interest claim withers away; if the trial counsel and appellate counsel did not have a personal relationship, then obviously, a nonexistent personal relationship could not have formed the basis for a conflict of interest. Absent clear and convincing evidence to the contrary,

which Abdillahi has not offered, this Court cannot set aside the finding that Abdillahi's trial and appellate counsel did not have a personal relationship.

Abdillahi also claims that even if his appellate counsel was not laboring under a conflict of interest, he still failed to provide effective assistance of counsel insofar as he declined to pursue claims of ineffective assistance against the trial counsel on direct appeal. To prevail on a claim of ineffective assistance of counsel, Abdillahi must show that his appellate counsel's performance fell below an objective standard of reasonableness, *see Strickland*, 466 U.S. at 687-88, and that there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different, *id*. at 694. This Court has already concluded that Abdillahi's ineffective-assistance claims with respect to trial counsel are without merit. Obviously, then, Abdillahi's appellate counsel could not have been ineffective in failing to raise those meritless claims, and Abdillahi could not have been prejudiced by the failure.[15] *See United States v. Behrens*, 570 Fed. App'x 630 (8th Cir.2014) (per curiam) (citing *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994) (per curiam)).

### 10.  Ground Fourteen — Actual Innocence

---

[15]  The attorney who concluded the prosecution of Abdillahi's direct appeal was his *second* attorney on appeal. The first appellate counsel also declined to pursue ineffective-assistance claims, telling Abdillahi (as the second appellate counsel would later tell Abdillahi) that any such claims would be meritless. (*See* Resp't Ex. at 16-17.) Abdillahi does not allege that the first appellate counsel also labored under a conflict of interest.

The final claim advanced by Abdillahi is that he is actually innocent of the offense for which he was convicted.[16] (*See* Am. Pet. at 4.) "The Supreme Court has not decided whether a persuasive demonstration of actual innocence after trial would render unconstitutional a conviction and sentence that is otherwise free of constitutional error." *Dansby*, 766 F.3d at 816 (citing *House v. Bell*, 547 U.S. 518, 554-55 (2006)). If such a claim may be brought at all, however, it "would require 'more convincing proof' than the 'gateway' standard that allows for consideration of otherwise defaulted constitutional claims upon a showing of actual innocence." *Dansby*, 766 F.3d at 816 (quoting *House*, 547 U.S. at 555). This Court has already explained in conjunction with the finding that certain of Abdillahi's claims have been procedurally defaulted that he has not made an adequate showing of actual innocence to meet even the "gateway" standard. The threshold for a freestanding actual-innocence claim would be higher still. *Id*. This final ground for relief must also be rejected.

## IV.   Remaining Matters

A few loose ends remain to be tied:

---

[16]   Abdillahi does not raise a sufficiency-of-the-evidence claim in his habeas corpus petition. In considering a claim that the evidence admitted at trial was insufficient to convict, the reviewing court is limited to the evidence submitted to the trier of fact and must resolve all conflicting inferences in favor of the prosecution. *Jackson v. Virginia*, 443 U.S. 307 (1979). By contrast, "[u]nlike a review of the sufficiency of the evidence which focuses on whether a rational juror *could* have convicted, a habeas court considering actual innocence may weigh any new evidence against that which was presented at trial and even make credibility assessments in determining whether rational jurors *would* have convicted." *Hayes v. Battaglia*, 403 F.3d 935, 940 (7th Cir. 2005) (J. Flaum, concurring).

47

After the submission of briefing in this matter, Abdillahi requested appointment of counsel to further pursue his claims [Doc. No. 44]. "[T]here is neither a constitutional nor statutory right to counsel in habeas proceedings; instead, it is committed to the discretion of the trial court." *McCall v. Benson*, 114 F.3d 754, 756 (8th Cir. 1997). Abdillahi's claims are numerous, but they are not unduly complex, and Abdillahi has put forward his claims with adequate clarity. Appointment of counsel would have been of little practical benefit to Abdillahi or the Court. It is therefore recommended that the motion for appointment of counsel be denied.

Abdillahi also submitted two motions relating to evidentiary concerns in these proceedings. In the first motion, Abdillahi asks this Court to compel the Government to turn over all materials relating to witness A.I.'s November 6, 2008, interview by the prosecution [Doc. No. 14]. "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Under Rule 6(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts, "[a] party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." Abdillahi has not shown good cause to compel production of evidence from the prosecution. As explained at length with respect to ground two of the habeas petition, the record does not support the inference that the Government suppressed evidence at all. Further, even if Abdillahi is correct about the content of the documents he seeks, he would not be entitled to habeas relief due to lack of prejudice.

48

In his second motion, Abdillahi moves for an evidentiary hearing, "compulsory process," and admission of hearsay evidence [Doc. No. 15]. That motion too should be denied. As an initial matter, much of the evidence Abdillahi seeks to draw out has already been explored by the state courts, which have already held two evidentiary hearings on Abdillahi's claims. For the most part, Abdillahi does not seek to develop *new* evidence so much as he seeks to relitigate the state-court evidentiary hearings in federal court.

Leaving that aside, "[t]he district court's power to conduct an evidentiary hearing is sharply limited by 28 U.S.C. § 2254(e)(2)(B)." *Cox v. Burger*, 398 F.3d 1025, 1030 (8th Cir. 2005) (citation omitted). "A habeas petitioner must develop the factual basis of his claim in the state court proceedings rather than in a federal evidentiary hearing unless he shows that his claim relies upon a new, retroactive law, or due diligence could not have previously discovered the facts." *Id.* "Additionally, the petitioner must show by clear and convincing evidence that, in the absence of the constitutional error, no reasonable factfinder would have found him guilty." *Id.* The only claim raised by Abdillahi as to which (1) he has not had an opportunity to develop the factual basis of in state court, and (2) he has acted with the requisite diligence, is the *Brady* claim presented in ground two of the habeas corpus petition. But as this Court has stressed, the record in this matter conclusively establishes that ground two is without merit, regardless of the evidence Abdillahi hopes to uncover. Even if the facts are exactly as alleged by Abdillahi in ground

two of his habeas petition, he would not be entitled to relief.  The evidentiary motions can therefore also be denied.[17]

Finally, a § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a certificate of appealability ("COA").  *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Abdillahi has raised many claims for relief, but none of those claims rises to the level of debatable in this Court's estimation.  This Court recommends that a COA not be issued.

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.  Petitioner Hassan Mohamed Abdillahi's Motion for Evidentiary Hearing, Compulsory Process, and Admission of Hearsay Evidence [Doc. No. 15] be **DENIED**.

---

[17]  Abdillahi also asks that this Court consider hearsay evidence he intends to present during the evidentiary hearing.  Because an evidentiary hearing is not warranted, this aspect of his motion is moot.  That said, this Court has considered the hearsay evidence already offered by Abdillahi in determining whether he has adequately established actual innocence sufficient to overcome the procedural default of certain of his claims.  And as already explained, this Court concludes that the evidence cited by Abdillahi is unconvincing for the usual reasons hearsay evidence is generally considered unreliable.

2. Abdillahi's Motion to Access and for Complete Disclosure of State Witness A.I's Suppressed November 6, 2008 Material Pretrial Interview Statements [Doc. No. 14] be **DENIED**.

3. Abdillahi's Motion for Appointment of Counsel [Doc. No. 44] be **DENIED**.

4. Abdillahi's Motion for Stay and Abeyance Procedure [Doc. No. 45] be **DENIED**.

5. Respondent Eddie Miles' Motion to Dismiss [Doc. No. 34] be **GRANTED IN PART** and **DENIED IN PART**, as follows:

    a. The motion be **DENIED** insofar as Respondent seeks dismissal of the entire action without prejudice as a "mixed" petition.

    b. The motion be **GRANTED** insofar as the claims presented in Abdillahi's amendment to the habeas petition are procedurally defaulted.

6. This matter be **DISMISSED WITH PREJUDICE**.

7. No certificate of appealability be issued.

Dated: June 29, 2017           s/ Hildy Bowbeer
                               HILDY BOWBEER
                               United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).